RECEIVED
IN LAFAYETTE, LA.

NOV 1 2 2010

TONY R. MOORE, CLERK
BY_____DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

MARIUSZ P. KOPROWSKI                       CIVIL ACTION NO. 09-0321

VERSUS                                     JUDGE DOHERTY

LEGACY OFFSHORE, LLC, ET AL.               MAGISTRATE JUDGE HILL

### MEMORANDUM RULING

Pending before the Court is the Motion for Summary Judgment [Doc. 32] filed by defendant Aries Marine Corporation ("Aries Marine"). Aries Marine seeks "dismissal of all claims asserted by plaintiff, Mariusz P. Koprowski" against it on grounds there are no genuine issues of material fact "as to Aries's liability under the Jones Act and General Maritime Law of the United States of America and that defendant is entitled to summary judgment dismissing plaintiff's claims against it with prejudice as a matter of law." Aries Marine's motion is opposed by plaintiff [Doc. 35], and Aries Marine has filed a reply brief.

For the following reasons, Aries Marine's motion for summary judgment is GRANTED, and plaintiff's claims against Aries Marine are DENIED AND DISMISSED WITHOUT PREJUDICE.

**I.      Factual and Procedural Background**

The following facts are undisputed by the parties:

1.      Plaintiff Mariusz P. Koprowski was a commercial diver employed by Legacy Offshore, LLC in September 2008.

2.      Newfield Exploration Company chartered the M/V RAM XI from Aries Marine Corporation in September 2008.

3.      The Blanket Time Charter between Newfield and Aries Marine provided that Aries furnish the vessel; the labor, master and crew to operate the vessel; and all supplies

equipment, materials, provisions and services required for operating, maintaining, victualing and supplying the vessel.  Aries Marine did not provide divers, dive supervisors, or dive equipment under the terms of the Blanket Time Charter with Newfield.

4.  Newfield contracted with Legacy Offshore to provide divers and dive equipment for Newfield's operations onboard the M/V RAM XI.

5.  Aries Marine and Legacy Offshore were parallel independent contractors of Newfield Exploration.

6.  Plaintiff was onboard the M/V RAM XI pursuant to the Master Service Contract between Newfield Exploration and Legacy Offshore at the time he was injured.

Plaintiff alleges he was injured when he was improperly decompressed while surfacing from a depth of approximately 115 feet of sea water on two occasions in September 2008.  Specifically, plaintiff alleges on September 22, 2008, he experienced a "decompression anomaly" when he breathed oxygen at the 40 fsw chamber stop for a total of 50 minutes, rather than the prescribed 39 minutes.  Then, on September 24, 2008, plaintiff alleges he again breathed oxygen at the 40 fsw chamber stop for a period of 50 minutes, rather than the prescribed 39 minutes.  Therefore, on both dives, plaintiff alleges he was given an additional 11 minutes of decompression.  Plaintiff alleges he felt fine after his second dive, but on the morning of September 25, 2008, he felt weakness in his left leg, which he reported to his supervisor.  A neurological examination was conducted at that time, and it was observed plaintiff could not walk a straight line or toe-to-toe.  Plaintiff was treated on-site with Treatment Table 6 and was transferred to shore on the evening of September 25, 2008 for further treatment.

Plaintiff also alleges the vessel was unseaworthy because the crane itself, which was under the control of Aries, was not suited for the purpose for which it was intended because it was not equipped with a swivel, which "made the stage" unsafe.  Specifically, plaintiff alleges he was injured

by the crane, because "he was made to hang on a down line in 6-8 ft. seas rather than being at rest in a stable decompression stage."

Plaintiff filed suit on February 27, 2009 against his employer, Legacy[1] and Aries Marine, the vessel owner, alleging negligence on the part of both defendants and unseaworthiness on the part of the vessel in the following particulars:

A.    Failing to provide petitioner a safe place to work;
B.    Failing to properly supervise and instruct;
C.    Improper method of operation;
D.    Incompetent or inadequate personnel and/or crew;
E.    Violating any and all applicable U.S. Coast Guard and/or safety statutes intended to protect petitioner (negligence per se);
F.    Failing to properly train;
G.    Failing to provide reasonably safe and proper equipment;
H.    Failing to properly decompress;
I.    Failing to provide proper medical treatment;
J.    Unsafe method of work;
K.    Any other acts of negligence and/or unseaworthiness which may be proven at or before the trial of this matter.[2]

Plaintiff alleges as a result of the foregoing negligence and unseaworthiness, he sustained severe disabling injuries to his mind and body.

In the instant motion for summary judgment, Aries Marine contends it has no liability for either negligence or unseaworthiness in the instant case because there is no evidence to support the plaintiff's claim that his injuries were caused by a breach of duty owed by Aries Marine or Aries Marine's employees, or by a condition of the vessel itself or its crew.

## II.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory

---

[1] Plaintiff alleges he is a Jones Act seaman; Legacy admits same.

[2] *See* "Plaintiff's Suit Under Jones Act and General Maritime Law," Doc. 1, ¶7.

judgment is sought may, at any time, move with or without supporting affidavits for a summary

judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that there is a genuine
> issue for trial. If the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility
> of demonstrating the absence of an issue of material fact with respect to those issues
> on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477
> U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial,
> the movant may merely point to an absence of evidence, thus shifting to the
> non-movant the burden of demonstrating by competent summary judgment proof that
> there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v.
> Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell
> Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient
> evidence favoring the nonmoving party for a jury to return a verdict for that party"
> is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial. Where no such
showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law'

because the nonmoving party has failed to make a sufficient showing on an essential
element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any
factual issues of controversy in favor of the non-moving party" only in the sense that,
where the facts specifically averred by that party contradict facts specifically averred
by the movant, the motion must be denied. That is a world apart from "assuming"
that general averments embrace the "specific facts" needed to sustain the complaint.
As set forth above, Rule 56(e) provides that judgment "shall be entered" against the
nonmoving party unless affidavits or other evidence "set forth specific facts showing
that there is a genuine issue for trial." The object of this provision is not to replace
conclusory allegations of the complaint or answer with conclusory allegations of an
affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no
genuine dispute as to a specific fact essential to the other side's case to demand at
least one sworn averment of that fact before the lengthy process of litigation
continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the
material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by
only a 'scintilla' of evidence. We resolve factual controversies in favor of the
nonmoving party, but only when there is an actual controversy, that is, when both
parties have submitted evidence of contradictory facts. We do not, however, in the
absence of any proof, assume that the nonmoving party could or would prove the
necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical
evidence is so weak or tenuous on an essential fact that it could not support a
judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing

all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.    Law and Analysis

### A.    Negligence and Negligence *Per Se*

The parties do not dispute that the law applicable to plaintiff's negligence claim against Aries Marine is governed by the general maritime law. In general, under the standard for negligence under general maritime law, the plaintiff must demonstrate there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991), *citing Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir.1985). Furthermore, the resultant harm must be reasonably foreseeable. *In re Cooper/T. Smith*, 929 F.2d at 1077, *citing Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980).

In its motion, Aries Marine acknowledges its general duty "of exercising reasonable care toward those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 79 S.Ct. 406, 409 (1959). Aries Marine argues plaintiff has presented no evidence demonstrating Aries Marine breached that duty of reasonable care in the instant case. Specifically, Aries Marine argues plaintiff stated under oath at his deposition he had no complaints about the vessel and did not see anything about the vessel that may have contributed to his injuries.[3]

---

[3] The plaintiff testified as follows:

> Q:    And what I'm trying to find out is whether or not you are aware of any

Aries Marine also cites the deposition testimony of Jason Kent, another diver onboard the M/V RAM XI at the time of the plaintiff's alleged injury, in which Mr. Kent testified he saw no problems with the vessel that may have contributed to the plaintiff's injuries.[4]

In response, plaintiff argues Aries Marine was negligent when it failed to provide a dedicated handling system, in this case, the Launch and Recovery System ("LARS"), to ensure the safe and expedient transfer of divers to and from the water and to provide a stable platform on which to complete in-water decompression. Rather than providing the LARS system, plaintiff contends Aries Marine agreed to provide the use of the vessel's crane "for diving support." Plaintiff contends in agreeing to allow the use of the vessel's crane, Aries Marine necessarily became "involved . . . directly, in the management and control of the diving operation." Plaintiff argues it was not acceptable to use the vessel's crane as the primary handling system under the circumstances of the dives in question, and argues "[i]t [was] the failure to provide a properly rated LARS that created the delay in getting Mr. Koprowski out of the water, and into the chamber, in sufficient time to stay within the maximum surface interval allowable for surface decompression using oxygen." In this manner, plaintiff contends liability can be imposed on Aries Marine for negligence.

In failing to provide a LARS system for the dives in question, plaintiff also contends Aries Marine violated Coast Guard Regulation 46 C.F.R. §197.320, which plaintiff argues regulates the

---

problems that the vessel had which may – or complaints about the vessel that may have contributed to your incident.

A:      I don't see it.

*See* deposition of Mariusz P. Koprowski, attached as Exhibit "C" to Aries Marine's motion for summary judgment, Doc. 32, at p. 322.

[4] *See* deposition of Jason Kent, attached as Exhibit "D" to Aries Marine's motion for summary judgment, Doc. 32, at p. 287.

use of diving ladders and stages.  46 C.F.R. §197.320 states:

**§197.320 Diving ladder and stage.**

(a) Each diving ladder must--

(1) Be capable of supporting the weight of at least two divers;
(2) Extend 3 feet below the water surface;
(3) Be firmly in place;
(4) Be available at the dive location for a diver to enter or exit the water unless a diving stage or bell is provided; and
(5) Be–

(I) Made of corrosion-resistant material; or
(ii) Protected against and maintained free from injurious corrosion.

(b) Each diving stage must–

(1) Be capable of supporting the weight of at least two divers;
(2) Have an open-grating platform;
(3) Be available for a diver to enter or exit the water from the dive location and for in-water decompression if the diver is–

(I) Wearing a heavy-weight diving outfit; or
(ii) Diving outside the no-decompression limits, except when a bell is provided; and

(4) Be–

(I) Made of corrosion-resistant material; or
(ii) Protected against and maintained free from injurious corrosion.

46 C.F.R. §197.320.

Plaintiff, also, argues the violation of this regulation constitutes negligence *per se*, *citing Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160 (5th Cir. 1985).  Plaintiff contends Aries Marine owed plaintiff a duty to provide a system which plaintiff identifies as a LARS system ("launch and recovery system"), a system apparently used in dive operations.  Specifically, plaintiff

-8-

alleges Aries Marine's failure to "recognize the duty to provide a properly rated launch and recovery system" led to the extension of the plaintiff's "surface interval," which led to the alleged decompression anomalies that occurred on September 22 and 24, 2008.

With respect to plaintiff's argument regarding negligence *per se*, this Court notes *Smith v. Trans-World Drilling, infra*, stands for the proposition that the violation of a Coast Guard regulation was *but one of five elements* of a negligence *per se* claim under the <u>*Jones Act*</u>. *See Smith v. Trans-World Drilling*, 772 F.2d at 160. As the plaintiff has alleged negligence against Aries Marine under the <u>*general maritime law*</u> (and, indeed, has not asserted a Jones Act claim against Aries Marine), *Smith v. Trans-World Drilling* does not, on its face, support plaintiff's argument.

However, even if this Court were to assume a violation of Regulation 197.320, that *alone*, could not constitute negligence *per se* under the general maritime law. Additionally, plaintiff has failed to demonstrate Aries Marine violated the regulation. In alleging negligence *per se*, plaintiff argues the following:

> . . . 46 C.F.R. 197.320 mandates the use of diving ladders and stages and the availability [sic].[5]

Notwithstanding that the foregoing sentence, as written, does not make sense, this Court concludes Regulation 197.320 does *not*, as plaintiff argues, "mandate the use of diving ladders and stages." Rather, Regulation 197.320 merely mandates certain *characteristics* of diving ladders and stages that are utilized. For example, Regulation 197.320 requires that each diving ladder and stage must "[b]e capable of supporting the weight of at least two divers;" each diving ladder must "[e]xtend 3 feet below the water surface;" and each stage must "[h]ave an open-grating platform."

---

[5] *See* plaintiff's opposition brief, Doc. 35, at p. 8.

The plaintiff does not allege the diving ladder or stage, that was utilized at the time of the plaintiff's accident, did not conform to the requirements of Regulation 197.320. Further, to the extent plaintiff argues Regulation 197.320 creates a *duty* on the part of Aries Marine to provide a "properly rated launch and recovery system," such argument is without support or merit. Plaintiff has put forth no evidence or persuasive argument that Aries Marine had the duty to provide the LARS system, all evidence presented being to the contrary, or that Aries Marine, in any way violated Regulation 197.320. Aries Marine has presented argument, evidence and jurisprudential authority that plaintiff's claim for negligence *per se* should not stand, plaintiff has failed to meet Aries Marines's argument and evidence; the jurisprudence cited by plaintiff does not stand for the proposition argued; thus, Aries Marine is entitled to summary judgment on plaintiff's negligence *per se* claim.

## DUTY - BREACH

With respect to plaintiff's *negligence* claim against Aries Marine under the general maritime law, plaintiff similarly argues Aries Marine owed a duty to plaintiff to provide a LARS system. Specifically, plaintiff claims Aries Marine "failed to recognize the duty to provide [a] properly rated launch and recovery system[]," without citing any authority, whether factual or jurisprudential, for the existence of such a duty. In its motion for summary judgment, Aries Marine argues and presents evidence to support its argument that it owed no duty, by way of contract, operation of law, or otherwise, to provide a LARS system; that it in no way interfered with the possible use or placement of a LARS system on its vessel; and that it had no responsibility for diver decompression, or timing within that process, and that all responsibility and decisions made for diving decompression were made by and rested with the plaintiff and his employer. Aries Marine, further, argues that as Plaintiff argues his injury is the result of the failure to provide a LARS system, which resulted in improper

decompression, and plaintiff has no evidence to support his claims that Aries Marine owed a duty

to provide a LARS system or otherwise ensure the proper decompression of the plaintiff, thus Aries

Marine argues Aries Marine has sustained its burden and should prevail.  In fact, Aries Marine

argues and presents evidence to support the fact that Legacy did, in fact, have a LARS onboard the

vessel, *but Legacy*, not Aries Marine, decided not to use it.[6] Further, Aries Marine argues under the

applicable law, it owed plaintiff a duty of only *reasonable care under the circumstances, see*

---

[6] This Court notes Aries Marine's brief on this point is not as clear as argued by Aries Marine, however, plaintiff presents no evidence to dispute the evidence presented by Aries Marine.  First, Aries Marine provided only select portions of the deposition transcripts of two individuals, Mark Corbin and Jerry Lowrimore, to support this argument and a careful review of the deposition testimony provided does not elucidate the issue.  Jerry Lowrimore, the company safety officer for Legacy, testified a "stage" was available onboard the vessel (without specifically testifying a "LARS" was onboard the vessel).  The single page of deposition testimony cited in support of Aries Marine's argument that it was *Legacy* that decided not to use the LARS system, and not Aries Marine, provides this Court with no context in analyzing the veracity of that statement.  Because Aries Marine did not cite to a specific line of testimony on that page, this Court is left to presume which portion of the testimony supports Aries Marine's argument.  The Court believes the following testimony is the cited testimony:

> Q:      [continued from page 24, which was not provided] load out an A-frame or a tugger for the dive stage?
> A:      I don't think so.  I think our primary source of egress from the water was supposed to be the – the crane.

*See* deposition testimony of Mark Corbin, p. 25, ll. 1-5.

Aries Marine goes on to argue the only reason a crane was used at the dive operation was because Legacy failed to bring "a tugger or an A-frame or anything to operate the dive stage."  Mr. Corbin confirmed in his testimony that Legacy did not bring a "tugger or an A-frame" onboard the vessel.  *See* deposition of Mark Corbin, p. 49, at ll. 14-19.

Based on the foregoing testimony, it is not as clear as Aries Marine argues that a LARS was actually onboard the vessel as Aries Marine argues.  Mr. Lowrimore testified a "stage" was available, but Mr. Corbin testified neither a "tugger" nor an "A-frame" were onboard.  In its opposition brief, the plaintiff states "[t]he industry-accepted standard for LARS is an A-frame system . . .," leading this Court to believe when Mr. Corbin was asked whether there was a "tugger or an A-frame" on board the vessel, he was being asked whether there was a LARS onboard the vessel.  Mr. Corbin testified there was not.

However, regardless of whether there was or was not a LARS system on board, this Court, nevertheless, concludes Aries Marine has presented a facially valid argument it was not Aries Marine's duty to provide a LARS onboard the vessel for diving operations and *Legacy* made those decisions relating to the use of a LARS system.  In response to this argument, plaintiff offers no evidence or jurisprudence that the duty to bring such a LARS system onboard was the obligation of Aries Marine, or that Legacy did not make the decisions relating to the use of a LARS, rather plaintiff does not dispute these arguments, rather, argues Aries Marine's agreement to allow its crane to be used "imposes liability on the part of the vessel owner."

*Kermarec*, 79 S.Ct. at 409, which duty it satisfied.

In response, plaintiff does not dispute Aries Marine's argument and evidence that Aries Marine owed no duty to provide a LARS system by contract, or operation of law, and that Legacy made the decisions as to use of a LARS system, and that "the crane operator was never utilized to control both the ascent rate and stage at various decompression stops ...." Rather, plaintiff argues Aries Marine's mere agreement "to provide the crane for the Ram-XI, for diving support . . . *necessarily involves [Aries Marine], directly, in the management and control of the diving operation*," which, in turn, "*imposes liability on the part of the vessel operator*." Plaintiff cites no facts or jurisprudence to support this argument, but rather, offers the report of Rickey Walker, plaintiff's diving safety expert, in support. Mr. Walker states in his expert report:

> Failure to employ a properly rated LARS is likely a contributing factor in the delay in getting [plaintiff] out of the water, and into the chamber, in sufficient time to stay within the maximum surface interval allowable for surface decompression using oxygen.
>
> The Ram-XI crane was not "the right tool for the job." Jason Kent testified that the crane did not have a proper swivel on the headache ball, to prevent spinning of the stage. It is also not standard practice for marine vessel to volunteer their crane wire for in-water service, also preventing them from lowering the stage to the required depths. For Aries Marine to agree to provide the crane on the Ram-XI, for diving support, involved them, directly, in the management and control of the diving operation. In my opinion, this raises serious issue of liability on the part of the vessel operator.[7]

Mr. Walker does not support, in any way, his opinion that the captain, in merely offering the use of the crane in certain identified circumstances, thereby assumed a duty to the plaintiff with respect to all diving operations and defendant, rightfully, argues Mr. Walker cannot purport to determine when and when not a legal duty is imposed, that being the purview of the Court. Mr.

---

[7] *See* Expert Report of Rickey Walker, attached as Exhibit "1" to plaintiff's opposition brief, p. 7.

Walker does, however, state it is not "custom" in the industry for a marine vessel to offer the use of its crane for diving operations, which, even if this Court were to accept that position, that in and of itself, under existing jurisprudence, would not necessarily visit liability upon a vessel.  Additionally, Mr. Walker's resulting opinion relied upon by plaintiff, goes well beyond his statement as to the custom and practice within the industry position and offers, in effect, a legal opinion, that by offering the use of the crane, the vessel became legally, duty-bound to the plaintiff with respect to *all* diving operations.  Plaintiff presents no factual basis or jurisprudence to support such a legal conclusion and Mr. Walker lacks the authority to establish such a duty.  As defendant argues, Mr. Walker's assertion is legal in nature, and is unsupported by the facts of the case or by law.  Indeed, plaintiff has cited no authority suggesting that a captain's agreement to provide a crane to facilitate a diver's egress from the water and to assist, potentially, in an emergency situation as a backup system, necessarily visits upon the vessel responsibility for the much broader "management and control of the diving operation."  Further, plaintiff has presented no factual evidence or support for a finding Aries Marine assumed responsibility for the management and control of the diving operations by allowing its crane to be used, thus, Mr. Walker's *legal* opinion cannot grant the support plaintiff seeks.

Plaintiff, however, also, presents the following deposition testimony of Mark Corbin, Legacy's operations manager, to support plaintiff's *factual* argument that Legacy and Aries Marine worked "in conjunction" on diving operations and that it was a "joint decision by Legacy and the Captain of the RAM" to use the vessel's crane rather than the surface dive stage or LARS:

> We had to work with a – we have to work with the boat crew when we put the equipment on the vessel, make sure we're not covering their tanks and everything. The weight, how the captain wants it for the lift boats, particularly for travel, for moving up and down. **There's a lot of discussion with the captain on positioning of equipment on the boat...there was a question about using [the crane] as a**

**secondary means as well as a ladder and a crane, so you have two ways in and out of the water.**

[ . . . ]

**We had a lot of talk with the crane operator about being there available to use in an emergency situation for egress of the – from the water.** (emphasis added)

However, instead of establishing that Legacy and Aries Marine worked "in conjunction" on diving operations or the choice to have and/or utilize a LARS and thus, supporting plaintiff's argument that Aries Marine and Legacy made "joint decisions" thereto, the foregoing testimony establishes only that Legacy worked with the vessel's crew *in the proper placement of **Legacy's** equipment aboard the vessel*, a subject Aries Marine acknowledges, and notes the crane was to be *"there available to use in an emergency situation for egress of the – from the water[,]"* a much more limited role than plaintiff argues.  Plaintiff provided no evidence to support his argument the role of the crane and crane operator and captain was broader than that argued by Aries Marine, or that Aries Marine made or contributed to the making of the decision, as plaintiff argues, to use the crane in lieu of a LARS or that Aries Marine assumed control of or chose to engage in or involve itself in the "management and control of the diving operation."   Rather, the only testimony presented on that point is by Aries Marine supporting the position that the decision was wholly *Legacy's*.  Again, Mr. Corbin's testimony suggests there was discussion between Legacy and the vessel's captain concerning the use of the vessel's crane as a *secondary means of egress from the water* for the divers, as well as the potential use of the crane *during emergency situations* as a secondary means of egress from the water to the vessel if the weather turned bad, *not as a tool to be used to control the movement through the decompression stages for the divers*, thus, plaintiff presents no evidence to dispute the assertion the crane operator did *not* control the ascent rate and the stage at the

-14-

decompression stops.

This Court notes, the full testimony provided of Mr. Corbin, **Legacy's** operation's manager,

on these points supports this conclusion, to wit:

Q:    Okay.  What discussions did you have with the person in charge of the vessel regarding the setup of the dive – the dive station?

A:    By the book.

Q:    Okay.

A:    We had to work with a – we have to work with the boat crew **when we put the equipment on the vessel**, make sure we're not covering their tanks and everything.   The weight, how the captain wants it for the lift boats, particularly for travel, for moving up and down. **There's a lot of discussion with the captain on positioning of equipment on the boat.**

**Q:    What discussions did you have with the captain of the vessel regarding the use of the vessel's crane to operate the diving stage?**

**A:    It was  – there was a question about using it as a secondary means as well as a ladder and a crane, so you have two ways in and out of the water.**

Q:    Was the boat jacked up above the  – above the  – what was the air gap between the dive station and the . .

A:    It changed with the weather.

Q:    Okay.

A:    Sometimes you would bring it up a little bit more and sometimes we were down lower.  **We** tried to keep it as close **as we** could without the waves slapping the bottom of the lift boat.

**Q:    Okay.  What discussions did you have with the  – obviously you didn't have any discussions with the crane operator regarding the use of the stage for decompression purposes did you?**

**A:    We had a lot of talk with the crane operator about being there to use in an emergency situation for egress of – from the water.**

**Q:** **But the crane operator was never utilized to control both the ascent rate and the stage at various decompression stops was he?**

**A:** **No, he wasn't.**

Q:     Because that was all done –

A:     He was on a – we were on a lift boat which is fixed and you have ground which is fixed to where you had the downline between the two. He was – for the short water stops the diver should be able to maintain on the downline at his position very easily.

**Q:** **Okay.  But you didn't have any discussions, I'm going to ask the question again, you didn't have any coordination or discussions regarding the use of the crane operator to use the stage for in-water decompression purposes?**

**A:** **There was a discussion, but it was if the situation got to the point where we needed if the weather picked up to such an extreme that it was necessary.**

Q:     Okay.[8]

The plaintiff has presented no evidence that an emergency situation arose on the vessel or that the "weather had picked up to such an extreme ..." at the time of plaintiff's injury, that the crane was used during such emergency situation, or that the plaintiff was injured by the crane during such an emergency situation, or that the crane was utilized to control the ascent rate and the stage at various decompression stops.  Indeed, the plaintiff has presented no evidence the crane played any role in the divers' work other than in certain select situations, and perhaps having been used to lift the divers the last ten feet out of the water.  Furthermore, again, plaintiff presents no evidence to

---

[8] This Court notes only select pages of Mr. Corbin's deposition were made available to the Court, which substantially complicated this Court's task of getting a full context of Mr. Corbin's deposition.  While plaintiff provided pages 46 and 47 of Mr. Corbin's deposition, Aries Marine provided page 47 and provided page 48 twice. Thus, this Court was forced to piece together the deposition from the two submissions of the parties in its attempt to get a clearer picture of the content of the testimony.  *See* deposition of Mark Corbin, pages 46-48, provided by the parties as stated hereinabove.

dispute the testimony presented by Aries Marine that the "crane operator was never utilized to control both the ascent rate and stage at various decompression stages," or that Legacy made the decisions regarding use of a LARS or the crane and placement of the equipment on the vessel. Thus, the plaintiff fails to sufficiently meet Aries Marine's supported motion for summary judgment by presenting evidence that the vessel or its captain owed a duty to the plaintiff to provide a LARS system for the dive operations in question, or that Aries Marine exercised control over the process plaintiff argues caused his injury. Nor does the plaintiff present any other argument, evidence, or jurisprudence that Aries Marine *breached the duty* of reasonable care it owed to the plaintiff by offering its crane for the select functions noted.

## CAUSATION

In addition to not carrying its burden to meet Aries Marine's evidence and argument submitted with respect to the duty and breach elements, plaintiff, also, fails to offer satisfactory evidence to dispute Aries Marine's argument there is no causation in this matter. In proving a negligence claim under the general maritime law, the plaintiff must show a causal connection between defendant's conduct and the plaintiff's injury. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991), *citing Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir.1985). Furthermore, the resultant harm must be reasonably foreseeable. *In re Cooper/T. Smith*, 929 F.2d at 1077, *citing Daigle v. Point Landing, Inc.,* 616 F.2d 825, 827 (5th Cir.1980).

This Court's review of the entirety of Mr. Corbin's testimony that was provided to the Court shows the crane was **not** used for purposes of ascent and/or decompression, and was **not** used to control both the "ascent rate and the stage at various decompression stops" in the water; plaintiff argues his injury resulted from the ascent rate and intervals of omitted decompression. Mr. Corbin's

testimony noted above, is supported and confirmed by the testimony of Jason Kent, another diver, who testified the "stage," which was controlled by the crane, was "never" used for decompression stops.[9] The evidence presented by Aries Marine establishes Aries Marine did not control the ascent rate, which plaintiff argues is a causative factor; plaintiff submits no evidence to dispute Aries Marine's evidence.

The plaintiff alleged he was injured by "failing to properly decompress."[10] In its motion for summary judgment, Aries Marine has presented argument, evidence, and jurisprudence sufficient to carry its initial burden as movant, that Aries Marine played no role in plaintiff's "failing to properly decompress." Both divers testified in effect, ". . . the crane operator was never utilized to control both the accent rate and the stage at various decompression stops," and testimony shows Legacy made the decisions as to use of a LARS. Plaintiff has presented no evidence to dispute that presented by Aries Marine.

## CONCLUSION AS TO NEGLIGENCE

Aries Marine has presented a well supported motion for summary judgment arguing plaintiff's claims in negligence should fail; plaintiff has failed to meet Aries Marine's evidence and argument, that is, plaintiff presents no evidence or persuasive argument to meet Aries Marine's prima facia case that Aries Marine owed no duty or obligation to provide a LARS system, or that a

---

[9] *See* Deposition of Jason Kent , attached as Exhibit "3" to plaintiff's opposition brief, at p. 39, l. 25, p. 40, ll. 1-6

[10] The plaintiff also argues he was jostled while hanging on the downline during the decompression stops, however, the parties have argued and discussed that claim in the section of the motion addressing unseaworthiness. This Court notes the plaintiff argues the negligence of the captain rendered the vessel unseaworthy, an argument untenable under the law and better addressed within a discussion of negligence. Notwithstanding the foregoing, because the parties have addressed this issue under the unseaworthiness section, this Court will address that issue in the unseaworthiness portion of this Ruling.

LARS system should have, by contract or otherwise, come with the vessel, or that the LARS system fell within Aries Marine's responsibility or that Aries Marine did not control the ascent rate or the "stage at various decompression stops;" that a LARS system, was, in fact, on board the vessel, but that *Legacy* decided not to use it.  Plaintiff has submitted no evidence to dispute any of Aries Marine's evidence. Furthermore, plaintiff presents no evidence to meet Aries Marine's evidence that the captain in no way interfered with or blocked the placement or use of a LARS system, or assumed responsibility for the "management and control of the diving operation," thus, Aries Marine has carried its burden as movant, and plaintiff has not carried his burden to meet Aries Marine's evidence and argument.  Again, in response to Aries Marine's evidence presented and argument made that Aries Marine and the crane did not control the "ascent rate" and the "stage at various decompression stops," and that Aries Marine owed no duty, contractual or legal, to provide a LARS system on the vessel and that Legacy made the decision as to the LARS use, plaintiff has presented no persuasive argument, or evidence to dispute that provided by Aries Marine.  Consequently, this Court concludes Aries Marine is entitled to summary judgment on plaintiff's negligence claim alleged under the general maritime law.  The foregoing claim, therefore, is dismissed without prejudice.

### B.    Unseaworthiness

Although Aries Marine's motion for summary judgment seeks dismissal of "all claims" against it, Aries Marine gives short shrift to plaintiff's unseaworthiness claim in its original motion.[11] The only argument advanced by Aries Marine that could be deemed to address the unseaworthiness

---

[11]The duty of seaworthiness is owed only to seaman; none dispute plaintiff was a seaman, although it is not argued plaintiff was a member of the operational crew of the vessel.  Neither party has presented argument the duty of seaworthiness is not owed *as a matter of law.*

claim is Aries Marine's argument that neither the plaintiff nor another diver articulated "any problems with the vessel that may have contributed to the plaintiff's incident."[12]  However, again, plaintiff bears the ultimate burden of proof at trial and, thus, should Aries Marine establish an absence of evidence to meet that argument, plaintiff must present some evidence or jurisprudence showing there is an issue of material fact warranting trial.

In its opposition brief, plaintiff argues the vessel was unseaworthy for two reasons: (1) The vessel captain was negligent[13] and incompetent *in failing to require* that a LARS be used and in "participating" in the dive operations by allowing the use of the "lifting mechanism," *which this Court assumes is the crane mentioned previously in plaintiff's brief*; and (2) the crane itself, which was under the control of Aries, was not suited for the purpose for which it was intended and, therefore, "was not the right tool for the job," because it was not equipped with a swivel, which made the stage unsafe.  Specifically, plaintiff alleges he was injured by the crane, because "he was made to hang on a down line in 6-8 ft. seas rather than being at rest in a stable decompression stage."[14]

Additionally, in arguing the vessel was unseaworthy, plaintiff argues Aries Marine was the operator of the M/V RAM XI, and that, pursuant to Coast Guard Regulations 46 C.F.R. 197.208 and 46 C.F.R. 197.402, the captain of the vessel is the "person in charge" and, therefore, has certain responsibilities, as follows:

---

[12] *See* Aries Marine's motion for summary judgment, Doc. 32, at p. 5.

[13] This Court notes as a general matter mere negligence of the captain can not, itself, support a finding of unseaworthiness of a vessel. *See, e.g., Szymanski v. Columbia Transport Co.*, 154 F.3d 591, 595 (6th Cir. 1998) (*en banc*).

[14] *See* plaintiff's opposition brief, Doc. 35, at p. 15.

### § 197.208 Designation of person-in-charge.

(a) The owner or agent of a vessel or facility without a designated master shall designate, in writing, an individual to be the person-in-charge of the vessel or facility.

(b) Where a master is designated, the master is the person-in-charge.

46 C.F.R. §197.208.

### § 197.402 Responsibilities of the person-in-charge.

(a) The person-in-charge shall—

    (1) Be fully cognizant of the provisions of this subpart;

    (2) Prior to permitting any commercial diving operation to commence, have--

        (I) The designation of the diving supervisor for each diving operation as required by § 197.210;

        (ii) A report on--

            (A) The nature and planned times of the planned diving operation; and

            (B) The planned involvement of the vessel or facility, its equipment, and its personnel in the diving operation.

(b) Prior to permitting any commercial diving operation involving liveboating to commence, the person-in-charge shall insure that--

    (1) A means of rapid communications with the diving supervisor while the diver is entering, in, or leaving the water is established; and

    (2) A boat and crew for diver pickup in the event of an emergency is provided.

(c) The person-in-charge shall insure that a boat and crew for SCUBA diver pickup is provided when SCUBA divers are not line-tended from the dive location.

(d) The person-in-charge shall coordinate the activities on and of the vessel or facility with the diving supervisor.

(e) The person-in-charge shall insure that the vessel or facility equipment and personnel are kept clear of the dive location except after coordinating with the diving supervisor.

46 C.F.R. § 197.402

In support of its unseaworthiness claim, plaintiff argues:

...the Person in Charge comes with the imposition of certain duties, which includes the dive operations on a vessel.

This designation gives him the responsibility over the dive operations aboard that rig. This responsibility included the planned involvement of the vessel or facility, its equipment, and its personnel in the diving operation. Like the captain of a ship, the Person-in-Charge is the person who is responsible for the health and safety of all souls aboard. His primary interest may be in the objectives of the rig (e.g., drilling operations), but that does not override his responsibilities for the well being of everyone on his vessel.[15]

Under the jurisprudence, both the ship and the shipowner are liable *to seamen* for injuries caused by unseaworthiness. *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 181 (5th Cir. 1981), *citing The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760, 764 (1903). To be seaworthy, a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended. *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988), *citing Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933 (1960). The owner's duty to furnish a seaworthy ship is absolute and completely independent of the duty under the Jones Act to exercise reasonable care. *Johnson*, 845 F.2d at 1354, *citing Mitchell*, 362 U.S. at 549, 80 S.Ct. at 932. *See also Springborn v. American Commercial Barge Lines, Inc.*, 767 F.2d 89, 100 (5th Cir.1985). Liability under the doctrine of unseaworthiness *does not rest upon fault or negligence. Hussein v. Isthmian Lines, Inc.*, 405 F.2d 946, 947 (5th Cir.1968). Additionally, to establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove the unseaworthy condition

---

[15] *See* plaintiff's opposition brief, Doc. 35, at p. 13.

played a substantial part in bringing about or actually causing the injury and that the injury was either

a direct result or a reasonably probable consequence of the unseaworthiness. *Johnson*, 845 F.2d at

1354, *citing Smith v. Trans-World*, 772 F.2d at 162; *Alverez v. J. Ray McDermott & Co., Inc.*, 674

F.2d 1037, 1042-43 (5th Cir.1982).

It is well-settled in maritime law that the concept of seaworthiness contemplates the crew as

well as a vessel and its gear. *See, e.g., Boudoin v. Lykes Brothers Steamship Co.*, 348 U.S. 336, 339,

75 S.Ct. 382, 385, 99 S.Ct. 354 (Supreme Court found no reason "to draw a line between the ship

and the gear on the one hand and the ship's personnel on the other" in determining whether the

warranty of seaworthiness had been breached); *see also Crumady v. Joachim Hendrik Fisser*, 358

U.S. 423, 427, 79 S.Ct. 445, 447, 3 L.Ed.2d 413 (1959) ("[u]nseaworthiness extends not only to the

vessel but to the crew.").[16]

This Court will now analyze each aspect of the plaintiff's unseaworthiness claim as argued

by plaintiff.

### 1.    Incompetence of Captain

Plaintiff argues the captain's *negligence* and *incompetence* in failing to require that a LARS

system be used and in "participating" in the dive operations by allowing the use of the crane rendered

the vessel *unseaworthy*. This Court notes negligence of the captain or crew does not, as a matter of

law, in and of itself, establish unseaworthiness, however incompetence might. Plaintiff, also, argues

the Captain was incompetent because he failed to require a LARS be used. However Aries Marine

---

[16] In addressing its unseaworthiness claim in its brief, plaintiff relies on the case of *Dugas v. Pelican Const. Co., Inc.*, 481 F.2d 773, 779-80 (5th Cir. 1973), without noting or advising this Court that the *Dugas* decision has been clarified and/or overturned on at least one point of law. This Court's own research found the point for which the case was cited is still good law.

has presented evidence the Captain owed no duty to require the use of a LARS, and factually did not make that decision, rather plaintiff's employer, Legacy made that decision. Thus, this argument is without factual support or merit. As this Court has already noted, Aries Marine has presented evidence and argument it owed no duty to provide a LARS, and Legacy made the decision as to the use of a LARS and the plaintiff has failed to satisfy its burden to present evidence to dispute the evidence presented or to meet Aries Marine's well-supported motion for summary judgment on the issue of whether the captain of the vessel owed a duty to "require" the use of a LARS system for the dives in question. Aries Marine has presented evidence the captain had no such duty; the plaintiff has provided this Court with no evidence that the captain owed such a duty. Under its Blanket Charter Agreement with Newfield, Aries Marine was to provide only the vessel, and all "labor, master and crew necessary to operate the vessel," as well as "all supplies, equipment, materials, provisions and services required for operating, maintaining, victualing and supplying the vessel," no argument is made by either party that the contract required a LARS. Thus, from a contractual standpoint, the plaintiff fails to show Aries Marine or the captain bore any responsibility to provide a LARS or for the decision to use or not use a LARS system; said LRS being unique to and a part of the dive operation, separate from the vessel operation. No evidence is cited or argument made the Blanket Charter Agreement contemplated or obligated Aries Marine to provide, *as a part of the vessel*, a LARS system. From a factual standpoint, Aries Marine has presented evidence Legacy made the decision on whether to use a LARS. No evidence is presented to dispute that presented by Aries Marine that Legacy made the decision concerning the LARS.

Aries Marine has presented evidence and argument Legacy controlled the diving operation and made the decisions as to use of a LARS; the plaintiff has not provided this Court with any

-24-

evidence to dispute Aries Marine's evidence on this point or to establish the custom or practice of the industry obligates a vessel owner or the captain of a vessel to provide a LARS system for dive operations occurring on the vessel.  Although the plaintiff presents the report of its diving safety expert, Rickey Walker, wherein Mr. Walker states it is not custom for a vessel to offer the use of its crane, Mr. Walker does not argue it is the custom of the industry for a vessel owner or captain to provide a LARS system.  Finally, the plaintiff has presented no jurisprudence to this effect.

Ergo, this Court has held, above, that the plaintiff has failed to meet Aries Marine's argument and evidence presented the captain and/or the vessel had no duty to provide a LARS system for diving operations.  Nor has the plaintiff put forth evidence or jurisprudential authority establishing that once the captain authorized the use of the crane, he thereby became "involved . . . directly, in the management and control of the diving operation" or controlled the "stage" or the "rate of ascent," rather all evidence being to the contrary.[17]  Again, Aries Marine has put forth persuasive argument, evidence, and jurisprudence arguing the captain was [neither negligent nor] incompetent.  Plaintiff has failed to meet Aries Marine's argument by presenting persuasive argument, evidence, or jurisprudence of its own.  Thus, this Court concludes the plaintiff has failed to carry its burden of meeting Aries Marine's evidence showing an absence of "the captain's negligence and/or incompetence" for failing to require that a LARS be used and in "participating" in the dive operations, or that by allowing the use of the crane, the vessel was rendered unseaworthy.  Therefore, Aries Marine must prevail on this issue.[18]

_____

[17]*See*: deposition testimony of Mark Corbin and Jason Kent.

[18]  Additionally, this Court notes the duties of the captain as the "Person in Charge" under Regulation 197.402 required only that the captain "coordinate the activities on and off the vessel or facility with the diving supervisor."  There is no evidence in the record the captain did not satisfy this duty.  Indeed, the record shows the captain discussed with Mr. Corbin the proper placement of Legacy's equipment aboard the vessel, as well as the use

### 2.    The crane itself was defective

Plaintiff also argues the vessel was unseaworthy because the crane itself, which was under the control of Aries, was not suited for the purpose for which it was intended because it was not equipped with a swivel, which "made the stage" unsafe. Specifically, plaintiff alleges he was injured by the crane, because "he was made to hang on a down line in 6-8 ft. seas rather than being at rest in a stable decompression stage."

In support of this argument, the plaintiff provides a single page of his own deposition testimony, wherein he testified as follows:

> Q:    And that you felt something physically happened to you because of this, or it was just – you just felt that you were moving more?
>
> A.    Well, I knew it was wrong once I goes – once I got going up and down.  I know it shouldn't be like that.  I know I should be in a stable place, slowly decompressing.
>
> Q:    Let me make sure I understand.  **Your testimony is that when you were *hanging on to the down line for your in-water decompression*, that you were moving not only sideways with the water hitting you, but you were also moving up and down**?
>
> A:    **That is correct.**
>
> Q:    Despite the fact that the down line was secured at both the bottom and the top?
>
> A:    Secure?  That's again, that word you use, "secure" –
>
> Q:    All right.  I'll rephrase it.
>
> A:    Okay.

---

of the vessel's crane as a *secondary means of egress from the water* for the divers.  Therefore, there is no evidence in the record that the captain violated Regulation 197.402.

Q:    To the best of your knowledge, all of the down lines which you used on the
      dive on September 24th were secured, tied off to the –[19]

The plaintiff argues the foregoing testimony shows the plaintiff was injured by the crane, in

that "he was made to hang *on a down line* in 6-8 feet seas rather than being at rest in a stable

decompression[] stage." (emphasis added)  However, in response, Aries Marine argues "the crane

was simply used to hold the stage at ten feet to lift up the diver so he did not have to climb the

ladder."  Aries Marine further argues *divers decompressed up the downline not on* "*the stage.*"  This

fact was confirmed by Mark Corbin, **Legacy's** operations manager, when he testified as follows:

Q:    Okay.  And then you had, your stage was right there in front of where you
      were sitting, correct?

A:    Exactly.

Q:    And which – and the small crane – which crane did they use for the stage?

A:    At this phase of the job we were only using the small crane.

**Q:    Okay.  And I take it from what I understand from other guys that the
      – the stage was putting in – was put in and held in ten foot of water; is
      that correct?**

**A:    We put it down to ten foot to lift him up so they didn't have to climb up
      the ladder.  *I figured* that was safer than climbing the ladder wearing
      almost 90 pounds of gear.**

**Q:    And then guys would go down the downline to the job site, and then *I
      take it they would decompress up the downline, correct?***

**A:    *Exactly.***

**Q:    *And then they would swim to the stage –*[20] (emphasis added)**

_____

[19] *See* deposition of Mariusz P. Koprowski, attached as Exhibit "5" to plaintiff's opposition brief, Doc. 35,
at p. 311.

[20] *See* deposition of Mark Corbin, attached as Exhibit "A-8" to Aries marine's reply memorandum, at p. 54
(emphasis added).

Thus, the testimony of Mr. Corbin shows decompression occurred up the downline; and then the divers would swim to the stage and the crane was simply used to hold the stage at ten feet to lift up " so [the divers] didn't have to climb up the ladder," which *Legacy* "figured" was safer than climbing "the ladder." Plaintiff's cited testimony does not contradict this assertion.

However, even if this Court were assume and accept plaintiff's argument from a *factual* standpoint – that is, that plaintiff was injured because "he was made to hang on a down line in 6-8 ft. seas rather than being at rest in a stable decompression stage" – the evidence presented to this Court shows the decision to use the crane and place the crane in ten feet of water *was made by Mr. Corbin, Legacy's operational manager, not by the vessel captain.* Indeed, Mr. Corbin testified he made the decision, for safety reasons, to place the crane in ten feet of water so the divers could be lifted by the crane to the vessel rather than having to climb a ladder wearing heavy equipment. Thus, the evidence shows although the captain agreed to allow the use of the crane, *it was not Aries Marine's personnel who decided to use the crane and where the crane would be placed and how it would be used.*

Finally, this Court notes Aries Marine has presented evidence and argument there is an absence of evidence to establish causation, and the plaintiff has failed to meet Aries Marine's evidence and argument to dispute that provided by Aries Marine. To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness. *Johnson*, 845 F.2d at 1354, *citing Smith v. Trans-World*, 772 F.2d at 162; *Alverez v. J. Ray McDermott & Co., Inc.*, 674 F.2d 1037, 1042-43 (5th Cir.1982). In the instant case, Aries Marine has presented persuasive

argument, evidence, and jurisprudence to support the relief sought by Aries Marine, and plaintiff has failed to show a genuine issue of material fact or present persuasive argument, evidence, or jurisprudence supporting a determination that the crane played a substantial part in bringing about or actually causing his injury. Indeed, whether the crane had a swivel or not appears to be immaterial as to Aries Marine, under the injury claimed. Plaintiff fails to meet the evidence and argument presented that Aries Marine was not involved in the process plaintiff alleges caused his injury; the decision to use the crane and on how the crane was to be used was one made by Legacy and not Aries Marine; therefore, Aries Marine has presented persuasive evidence, argument, and jurisprudence arguing plaintiff's claim cannot meet the standard for unseaworthiness against Aries Marine, its vessel, or its captain, and plaintiff has failed to meet Aries Marine's well-argued motion. Consequently, Aries Marine should prevail on this issue.

## IV. Conclusion

Therefore, for the foregoing reasons,

IT IS ORDERED that the "Motion for Summary Judgment" [Doc. 32] filed by defendant Aries Marine Corporation is GRANTED, and plaintiffs' claims against Aries Marine Corporation are DENIED AND DISMISSED WITHOUT PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___10___ day of November 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE